# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

NOVEMBER TERM, 1880.

---

THE CITIZENS COACH COMPANY, appellants,

*v.*

THE CAMDEN HORSE RAILROAD COMPANY, respondents.

1. The right acquired by a horse railroad company, under a legislative grant authorizing it to lay rails in a public highway, and to run cars thereon, charging fare, is such as entitles it to exclude from the habitual and continuous use of its tracks all companies and persons engaged in carrying passengers for hire, in competition with it.

2. That the right of a horse railroad company is thus exclusive, is not inconsistent with the view that such a railroad, laid on a public highway, is only a modification of the public use to which the highway was originally devoted, and not an additional burden on the land for which compensation may be required.

3. The right of the horse railroad company arises from the legislative control of the public easements of highway. The legislature may, when it deems it judicious to do so, grant to a private corporation some interest in the public highway, imposing on it a duty and obligation to provide for public travel thereon in a mode promotive of the public good. In such case the public easement remains unchanged in character or degree. The private corporation

(267)

Citizens Coach Co. *v.* Camden Horse Railroad Co.

acquires so much of the public use as is necessary for the purposes of its grant, and other public uses are limited and restrained for the attainment of such purposes.

4. Arising from the legislative requirement that the rails shall be laid on the level of the highway, and of a width corresponding to the wagon-track established by law, there is an implied permission, on the part of the horse railroad company, to the use of the track by other vehicles to some extent. Such permission does not emanate from the company so as to be revocable by it. It results from the nature of the grant, and is in the form of a condition resulting from the grant and its acceptance. The use, however, thus impliedly permitted is only such as is consistent with the grant to the company, and not destructive of its purpose. Any use inconsistent with the grant, and destructive of its purpose, is excluded.

On appeal from the decree of the chancellor, reported in *Camden Horse Railroad Co.* v. *Citizens Coach Co., 4 Stew. Eq. 525.*

*Mr. A. C. Scovel,* for appellant, cited—

*Brooklyn Central* v. *Brooklyn C. R. R. Co., 25 Barb. 364; Hinchman* v. *Paterson Horse R. R. Co., 2 C. E. Gr. 75; Jersey City & Bergen R. R. Co.* v. *Jersey City & Hoboken Horse R. R. Co., 5 C. E. Gr. 62; 1 Redf. on Railways (5th ed.) 329; 2 C. E. Gr. 80; Hegan* v. *Eighth Ave. R. R. Co., 15 N. Y. 382; Shea* v. *Potrero & Bayview R. R. Co., 44 Cal. 428; Id. 416; Brooklyn City R. R. Co.* v. *Coney Island R. R. Co., 35 Barb. 371; Wilbrand* v. *Eighth Ave. R. R. Co., 3 Bosw. 320; Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co., 32 Barb. 370; Sixth Ave. R. R. Co.* v. *Kerr, 45 Barb. 140; Fetterick* v. *Dickenson, 22 How. Pr. 248; Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co., 33 Barb. 420; Jersey City & Brooklyn R. R. Co.* v. *Jersey City & Hoboken R. R. Co., 5 C. E. Gr. 61; Barker* v. *Hudson R. R. Co., 4 Daly 274; Metropolitan R. R. Co.* v. *Quincy R. R. Co., 12 Allen 269; Adolph* v. *Central Park, N. & E. River R. R. Co., 65 N. Y. 554; S. C., 76 N. Y. 533, 535, 536; Albany Law Jour. (May 26th, 1877), 403; Shea* v. *Sixth Ave. R. R. Co., 62 N. Y. 180; Com.* v. *Temple, 14 Gray 74; Middlesex R. R. Co.* v. *Wakefield, 103 Mass. 263; Baxter* v. *Second Ave. R. R. Co., 3 Rob. 516; Adolph* v. *Central R. R. Co., 33 N. Y. Superior Ct. 187, 188; P. L. of 1871 p.*

*225 § 30 ¶ 7; P. L. of 1871 p. 247 (§ 76 of charter); 103 Mass. 206; P. L. of 1866 p. 643; 2 C. E. Gr. 80; 2 Stew. Eq. 299; Hilliard on Injunctions § 23; Stew. Dig. p. 61 §§ 32, 33; 2 Stew. Eq. 299.*

Mr. *D. J. Pancoast,* for respondent, cited—

*3 Kent's Comm. (12th ed.) 458; Ang. & Ames on Corp. (9th ed.) § 4; Angell on Highways (2d ed.) 28; Wait's Actions and Defences vol. 5 p. 338; Jersey City & Bergen R. R. Co. v. Jersey City & Hoboken Horse R. R. Co., 5 C. E. Gr. 69; Brooklyn R. R. Co. v. Brooklyn City R. R. Co., 32 Barb. 372; Troy & Lansingburg R. R. Co. v. Collins; Newburg Turnpike Road v. Miller, 5 Johns. Ch. 101.*

Mr. *P. L. Voorhees,* for respondent, cited—

*Mayor of Jersey City v. Jersey City R. R. Co., 5 C. E. Gr. 366; Hinchman v. Paterson Horse R. R. Co., 2 C. E. Gr. 75; Paterson & Passaic R. R. Co. v. Mayor of Paterson, 9 C. E. Gr. 158; Brooklyn City R. R. Co. v. Coney Island R. R. Co., 35 Barb. 264; 1 Redf. on Railways p. 540 § 6; Brooklyn Central R. R. Co. v. Brooklyn City R. R. Co., 32 Barb. 358, 370, 372; Davis v. Mayor of New York, 14 N. Y. 506, 515, 516; Brooklyn City R. R. Co. v. Coney Island R. R. Co., 35 Barb. 364, 371, 372; Brooklyn Central & Jamaica R. R. Co. v. Brooklyn City R. R. Co., 33 Barb. 420, 421; 1 Redf. on Railways p. 317 §§ 7, 8, p. 318 §§ 9, 10, p. 320 § 15; Metropolitan R. R. Co. v. Quincy R. R. Co., 12 Allen 262, 269, 270; Commonwealth v. Temple, 14 Gray 69, 74, 77; Metropolitan R. R. Co. v. Highland R. R. Co., 118 Mass. 290; Hegan v. Eighth Ave. R. R. Co., 15 N. Y. 380, 382; Whitaker v. Eighth Ave. R. R. Co., 51 N. Y. 295, 299; New York & Harlem R. R. Co. v. Forty-second St. R. R. Co., 5 Barb. 285, 287, 309; Jersey City & Bergen R. R. Co., v. Jersey City & Hoboken R. R. Co., 5 C. E. Gr. 61, 71, 72; S. C. 6 C. E. Gr. 550, 560; Sixth Ave. R. R. Co. v. Kerr, 72 N. Y. 330; Adolph v. Central Park, N. & E. River R. R. Co., 76 N. Y. 530, 537; Jersey City Gas Co. v. Dwight, 2 Stew. Eq. 242, 249, 250; Raritan & Delaware*

*Bay R. R. Co.* v. *Delaware & Raritan Canal Co.,3 C. E. Gr. 546, 570, 572; Pennsylvania R. R. Co.* v. *National R. R. Co., 8 C. E. Gr. 441; 1 Redf. on Railways 317, notes; Troy & Lansingburg R. R. Co.* v. *Collings, MS. case, Supreme Ct. N. Y. (Rensselaer Co.), Dec., 1878; Kent* v. *Morgan, 2 Keen Ch. 213; Cooley on Const. Lim. 544; Glover* v. *Powell, 2 Stock. 211, 212; Delaware & Raritan Canal Co.* v. *Raritan & Delaware Bay R. R. Co., 1 C. E. Gr. 321, 378; Hilliard on Injunctions 392 &c.; Boston Water Power Co.* v. *Boston & Worcester R. R. Co., 16 Pick. 512, 525; Osborn* v. *Bank of U. S., 9 Wheat. 738, 838; Newburg Turnpike Co.* v. *Miller, 5 Johns. Ch. 101; Croton Turnpike Co.* v. *Ryder, 1 Johns. Ch. 611; Ogden* v. *Gibbons, 4 Johns. Ch. 150, 160; Agar* v. *Regent's Canal Co., Coop. Eq. 77; Shard* v. *Henderson, 2 Dow 519; Packer* v. *Sunbury & Erie R. R. Co., 19 Pa. St. (7 Harris) 211, 218; Kerr on Injunctions p. 199 §§ 3, 4, p. 201 § 5; High on Injunctions 212, 213; Eden on Injunctions 231; Hilliard on Injunctions 393, 573; Kerlin* v. *West, 3 Gr. Ch. 449; Kerr on Injunctions p. 199 § 4, p. 542 § 4; Livingston* v. *Van Ingen, 9 Johns. 507, 562, 585; Thompson* v. *New York & Harlem R. R. Co., 3 Sandf. Ch. 626.*

The opinion of the court was delivered by

MAGIE, J.

An act of the legislature, approved March 23d, 1866 (*P. L. of 1866 p. 640*), created the Camden Horse Railroad Company, with a capital stock of $50,000, and the privilege of increasing the same to $100,000. The company was, by that act, empowered to construct, use and maintain a railroad over certain streets in Camden, the track to be of the width of the wagon track then established by law, and to be laid level with the surface of the streets and in conformity with the grades then or thereafter established. Upon the requirement of the city council of Camden, the company were to pay a tax to the city, not exceeding an amount specified in the act. The company was also empowered to construct or purchase suitable vehicles for the transportation of passengers and property over the railroad, and

was authorized to demand and receive for such transportation such sums as it should think reasonable and proper, not exceeding, however, a certain sum fixed by the act for each trip of a passenger. The act also gave to the company an action against any person who should " willfully or maliciously impair, injure, destroy or obstruct the use of said railroad," and permitted the recovery of three times the damage sustained by the company. The company was also empowered to borrow the money necessary to build or equip said road, and to secure the payment thereof by a mortgage on the " road, lands, privileges, franchises and appurtenances of or belonging to said corporation."

The company thus incorporated shortly afterwards built a railroad through some of the streets of Camden, in substantial accordance with the requirements of the act above referred to. It has since built other roads or branches through other streets in Camden, under the powers given by the above-mentioned act or supplements thereto. It has continued to operate the railroads so built ever since.

In October, 1876, the Camden Horse Railroad Company filed a bill in the court of chancery against the Citizens Coach Company, setting out the facts of the incorporation and organization of the horse railroad company above stated, and the construction of its railroads. The bill charged that the defendant therein had been incorporated on July 29th, 1876, under the general law of this state entitled "An act concerning corporations," approved April 7th, 1875, for the purpose of carrying passengers and property in and about Camden, for compensation, and that it had continually, since its organization, made use of the railroads of the complainant, in the pursuit of its business, by driving its coaches upon and along the railroad track, to the obstruction and hindrance of the use of the railroad by its owner, the complainant. The bill also distinctly alleged that the complainant was entitled to the exclusive use and enjoyment of said railroad, as against the said coach company or any other person seeking to use the same in the business of transporting persons or property. The prayer of the bill was that the coach company should be enjoined from using with its coaches, in the pursuit of

its business of carrying passengers in and about the city of Camden, the railroad of the complainant.

The Citizens Coach Company, the defendant, filed its answer to this bill, denying that it had made such continuous or obstructive use of the complainant's railroad as was charged, and further, denying the right of complainant to the exclusive use and enjoyment of the railroad in the transportation of passengers.

Upon the issue thus formed proofs were taken, and upon the pleadings and proofs the chancellor concluded that the complainant was entitled to relief, and an injunction was decreed, restraining the defendant from using with its coaches, in the pursuit of its business of carrying passengers in and about the city of Camden, the railroad of the complainant, in competition with the complainant in its business of carrying passengers and property thereon, and from obstructing or hindering complainant in the use of its railroad tracks. The decree further provided, however, that it was not to be construed as restraining defendant from " using the tracks incidentally to the use of the street."

From that decree the Citizens Coach Company has appealed to this court, and now contends not only that the evidence in the cause did not justify the court below in holding that it was using the railroad tracks obstructively, but that no right exists in the railroad company to exclude its coaches from the use of the railroad track, although engaged in carrying passengers for hire in competition with the railroad company.

The first contention it is unnecessary to stop to consider. The evidence seems to be ample of such a continuous and obstructive use of the railroad track by the coaches of the coach company as greatly to interfere with and impede the horse railroad company in its use of its track. Whether this alone would justify an injunction before action at law might be questionable.

But the main question in this case is presented by the other contention of the appellant. It is a question of very great importance, not only to the parties to this cause and those interested in them as stockholders or otherwise, but also to the stock and bondholders of the numerous horse railroad companies

organized and operated in this state under grants substantially similar to that in question in this case. It requires the consideration and determination of the nature and extent of the rights acquired by a horse railroad company under such legislation as appears in this case, with respect to the public highways on which the rails of its track are laid.

The question of the rights of such a company with respect to the owners of the land under the highway on which the track is laid has been the subject of much judicial consideration. The question has arisen upon the demand of the land-owner to be awarded compensation for the occupation of his land by the railroad. He has contended that such an occupation of the public highway imposed upon his land a burden greater than that which it sustained before, and which amounted to a taking of his land, or some interest therein, for which he was entitled to compensation. On the other hand, the railroad companies have contended that the occupation of the highway by the track and its use by the cars was no other or different use than that public use to which the highway was originally devoted.

A similar question had arisen in the early periods of the history of railroads designed to be operated by steam-power. With a limited and imperfect knowledge of the extent of development to which such roads were destined to attain, or with an exaggerated or distorted view of their character as public highways, it was long contended that such railroads might occupy the soil of ordinary public highways without making compensation to the land-owner. Much difference of judicial opinion and decision may be found on this subject. In this state, in the case of *Morris and Essex R. R. Co.* v. *Newark, 2 Stock. 352*, Chancellor Williamson expressed the opinion that the legislature might authorize a railroad operated by steam to be laid on the public highway, and that if the occupation did not entirely destroy the use of the highway in the ordinary mode, it was not such a taking of private property as required compensation to be made. On the other hand, the supreme court, about the same time, in the case of *Starr* v. *Camden and Atlantic R. R. Co., 4 Zab. 592*, held that the owner of land under a public highway taken by a

18

railroad operated by steam, was entitled to compensation. The cases of *Hetfield* v. *Central R. R. Co., 5 Dutch. 571*, and *M. & E. R. R. Co.* v. *Prudden, 4 C. E. Gr. 386; S. C., 5 C. E. Gr. 530*, indicate that the view taken by the supreme court is correct. And the reason is pointed out by Chancellor Green, in the case of *Hinchman* v. *Paterson H. R. R. Co., 2 C. E. Gr. 75*, with his usual perspicuity and breadth of view. And considering the developments of the railroads of the country, it is now perfectly obvious that the use of a public highway longitudinally by a railroad operated by steam, is a use entirely inconsistent with and destructive of the public use to which the highway was originally devoted. The rate of speed at which such roads are operated is dangerous to the public who would otherwise use the highway. It makes use of rails not adapted to, but obstructive of, the ordinary public use of the highway by the usual vehicles of travel thereon. The noise, the danger, the obstruction of its road-bed, all combine to make the use of the highway by such a railroad incompatible with its general use as a public highway. In such a case, then, the railroad becomes a manifest burden on the soil additional to that originally imposed by the public highway, which is a taking of property for which compensation must be made. The question may be considered as set at rest, now, in favor of the above views, by a decided weight of authorities, to be found collected in *1 Redf. on Railways (5th ed.) 314 et seq.*, and notes.

It is obvious, however, that an ordinary horse railroad, in occupying a highway with its track, and making use of it with its cars, produces a different result from that produced by such an occupation and use by a railroad operated by steam. By legislative direction, the track of the horse railroad is required to be (as in this case) so constructed not only as not to interfere with or prevent the passage of other vehicles, but to be adapted to such passage both across and along the rails. The cars are drawn by animals such as usually draw the vehicles used on public highways. They carry along the highway such passengers as otherwise would be obliged to pass over it on foot or in other vehicles, and do so with no more injury in the way of noise, jar

or disturbance than would be occasioned by the passage of other vehicles. The use, if it be novel and peculiar in its form, is but a modification of the original use to which the highway was devoted when it became a highway. The burden imposed thereby upon the land-owner, so far as the use of his property is concerned, is identical in kind and no greater in degree than was originally imposed on the land when the highway was opened. Such was the view taken by Chancellor Green in the case of *Hinchman* v. *Paterson H. R. R. Co.*, above cited, and he consequently held that the occupation of a street by a horse railroad was not such a taking of property as would entitle the owner to compensation. This view was mentioned with approval by Chief Justice Beasley, in *State* v. *Laverack, 5 Vr. 201*, and by Chancellor Zabriskie, in *Jersey City and Bergen R. R. Co.* v. *Jersey City and Hoboken R. R. Co., 5 C. E. Gr. 61, 66,* and was followed by the present chancellor, in *Paterson and Passaic Horse R. R. Co.* v. *Paterson, 9 C. E. Gr. 158.*

I do not hesitate to adopt this view, sanctioned by such authorities and so reasonable in itself, and to conclude that, so far as the owner of land under a highway is concerned, the use of the highway, by legislative sanction, by a horse railroad is not inconsistent with the public use to which the highway was originally devoted, and is not an additional burden imposed on the land, but only a variation or modification of the public right and easement originally acquired. Consequently, such owner has no right to claim compensation for such occupation of the highway.

While this view has been adopted by many courts, it has also been controverted by judges of repute, and the decisions are consequently very conflicting. No good purpose will be served by a critical examination of the cases in this opinion. It is sufficient to say that, when analyzed, the difference between the cases seems to arise from the different views entertained by the judges in respect to the practical question as to how far the use of the highway by the railroad is incompatible with the use to which the highway was originally devoted. And it may be remarked that when a conclusion, different from that to which I have arrived, has been reached, dissenting opinions have been expressed

by judges, whose opinions are entitled to respect. See *39 N. Y. 404*. The cases may be found collected in *1 Redf. on Railways (5th ed.) 317 and notes*. In the late case of *Att'y-Gen.* v. *Metropolitan R. R. Co., 125 Mass. 515*, the supreme court of Massachusetts reach a conclusion in accord with that to which we have arrived.

The discussion, so far, may seem, perhaps, to be somewhat beside the real question in this case. But its applicability will be recognized when it is understood that it is insisted that the conclusion to which we have arrived compels us to adopt a view of the case adverse to the claim of the appellee. It is insisted that if the property-owner be not entitled to compensation, on the ground that the burden on his land is not increased by the use of the highway by a horse railroad, but that such use is a mere modification of the public easement before taken, then it follows that the public right must continue and remain, as before, open to every person. It is claimed that a use of the highway which would exclude, in whole or in part, a portion of the public, is incompatible with such use as the highway was originally devoted to, and therefore that it cannot be consistently held that any exclusive rights are vested in horse railroad companies.

I am unable to see any force in this objection. When a highway has been once taken for public use, the owner of the land retains his title to the same, subject to the public easement. That public easement vests in the public. How far it extends it is not necessary now to inquire. Whether it gives power for the laying of underground or the building of elevated railroads, need not be considered. It is sufficient to consider the easement as one of a right of passage over the same by the public. This right, however, the legislature may, it is well settled, control. It may control the road for the public use; it may regulate the public use. Thus, it will be conceded, changes of the grade of highways may be made by the public authorities, and the landowner is entitled to no compensation or redress, however injurious or destructive such changes may be, unless under the provisions of such a statute as exists in this state. *Rev. 1009*. The public may, without further compensation, lay sewers in the

highway. *Stoudinger* v. *Newark, 1 Stew..Eq. 446*. Water-pipes, it seems, may be laid within the highway as part of the original burden, at the legislative will. *Jersey City* v. *Hudson, 2 Beas. 420*. And in the well-considered case of *Wright* v. *Carter, 3 Dutch. 76*, the supreme court, Chief Justice Green delivering their opinion, held that the legislature might authorize a turnpike company to take a public highway and construct its turnpike thereon, without making compensation to the land-owner whose lands were thus appropriated. The act, which was the subject of consideration in that case, provided for the vacation of the public highway by surveyors of the highways, and it appeared, in the case, that it was so vacated for the purposes of the turnpike. It also appeared that the turnpike company were authorized to charge tolls for all persons traveling thereon. But the court held that the public easement originally acquired over the land was not thereby discharged, and although transferred to a private corporation authorized to exact tolls from travelers and empowered to exclude all who did not pay toll to them, remained yet the same public easement, and was not an additional burden on the land for which compensation could be required. This decision it is unnecessary to vindicate or support in this court, because, although the case of *Wright* v. *Carter* was afterwards reversed (no opinion appearing in the reports), it is understood that the reversal was upon other grounds, and that the opinion of the court below, on the point in question, was approved. *3 Dutch. 685, note; State* v. *Laverack, 5 Vr. 207; Freeholders* v. *Red Bank Turnpike Co., 3 C. E. Gr. 93*. But I think the decision may well be vindicated upon plainest principles. The public easement requires for its beneficial use the making and maintenance of a roadway. The legislature, representing the public, may well determine whether this shall be done by the public, and at its expense, or by a private corporation. In the latter case it may give to such corporation a right to exact reasonable tolls, to remunerate it for its outlay and labor. The object is not the benefit of the private corporation. That is merely incidental. The real design is the public good in the use of the public highway. If that can be best served, in the judgment of those rep-

Citizens Coach Co. v. Camden Horse Railroad Co.

resenting the public, by making a turnpike thereon, it may properly be done. Manifestly, then, no additional burden is thereby imposed on the land-owner. See, also, *Benedict* v. *Goit, 3 Barb. 459.*

I do not perceive, therefore, that the use of the highway by a horse railroad company, if held to be exclusive of its use to some extent by others, is thereby an additional burden on the land. Nor can I see any inconsistency in holding that the land-owner is not entitled to compensation, although the use is more or less exclusive. Such use is, in fact, but a modification of the original public use, established by the representatives of the public, to serve the public purpose in the transportation of passengers upon the highway. It is for the legislature to decide if this is a judicious and proper mode of use for the public good. If it is so considered, then the legislature may authorize it, and may limit and control other public uses of the highway for that purpose. So long as the use made is of the same kind as that to which the land was originally devoted, the owner cannot complain of any modifications or limitations of it.

Let us next inquire what rights a horse railroad company acquires by the legislation with respect to other persons making use of the highway in passing and repassing thereon. Are its rights merely those of passage back and forth upon the rails which it has been permitted to lay upon the public highway? Or has it the power of excluding others from the use of its rails, and if so, how far does that power extend?

The grant in this case must be conceded to be of a franchise. It includes the right to lay down tracks, to run carriages thereon, to carry passengers, and to exact tolls. Such a grant must be construed as giving all the powers reasonably necessary to accomplish the manifest object. *M. & E. R. R. Co.* v. *Sussex R. R. Co., 5 C. E. Gr. 542.* That it contains no words of exclusion, is not of consequence, for the grant of a franchise, by its intrinsic force, is exclusive against all persons but the state. *R. & D. Bay R. R. Co.* v. *D. & R. Can. Co., 3 C. E. Gr. 546, 572.* As was well said by Chief Justice Shaw, in *Commonwealth* v. *Temple, 14 Gray 76,* "The accommodation of travelers, of all who have occasion to

Citizens Coach Co. *v.* Camden Horse Railroad Co.

use them, at certain rates of fare, is the leading object and public benefit for which these special modes of using the highway are granted, and not the profit of the proprietors." "The profit to the proprietors is a mere mode of compensating them for their outlay of capital in providing and keeping up this public easement." "Every such grant must, therefore, be held to carry with it all incidental rights which are necessary to its full use and beneficial enjoyment. When the grant has for its object the procurement of an easement for the public, the incidental powers must be so construed as most effectually to secure to the public the full enjoyment of such easement."

Upon such grounds horse railroad companies have been held to have certain exclusive rights, because the exercise of such rights is plainly necessary to the existence and beneficial use of the railroad. Thus a horse car is held to be entitled to the exclusive use of its track, so that another vehicle in meeting it, is, contrary to the usual rule of the road, required to give way and entirely remove from its track. A similar rule is adopted when the horse car overtakes a vehicle proceeding in the same direction, or encounters a vehicle lawfully stopping in the street to deliver goods, &c. *Commonwealth* v. *Temple, ubi sup.*; *State* v. *Foley, 31 Iowa 527*; *Hegan* v. *Eighth Ave. R. R. Co., 15 N. Y. 380*, and other cases cited in the chancellor's opinion.

It has also been held that a horse railroad company may exclude from its tracks the cars of another horse railroad company, though given authority to use such tracks by the legislature, unless compensation is required to be made. *J. C. & Bergen R. R. Co.* v. *J. C. & Hob. R. R. Co., 5 C. E. Gr. 66*; *S. C., 6 C. Gr. 550*; *Brooklyn Cent. R. R. Co.* v. *Brooklyn City R. R. Co., 32 Barb. 358*; *Metrop. R. R. Co.* v. *Quincy R. R. Co., 12 Allen 262.* Now the use of one railroad by the cars of another company may be objectionable, because it is probable, and almost certain, that such use would be incompatible with its full use and enjoyment by the company that laid it. But it is not difficult to conceive of cases where it would be quite possible to run cars on other railroads, at least for short distances, without interfering with the regular use of the road by the owners. And so in the cases

last cited, the ground of the decision has been, not that there was an interference with the full use of the railroad, but that there was such an occupation of the property and franchise of the railroad company as was manifestly a taking or appropriation of property for which compensation might be required, and must be provided. Such was the view taken by Chancellor Zabriskie in the case in *5 C. E. Gr. 66*, above cited. The iron rails of the railroad laid in the street, he held to be the property of the railroad company, not abandoned to the public or to every use by those passing over the street. Such use as was incidental and occasional was held to be justified by an implied permission arising from the mode in which the track was required to be laid. But such use was held not to include the use of the track for a competing traffic by the regular running, over the rails, of cars or carriages adapted to the track and operated by a rival company. When that case came into this court by appeal, no dissent was expressed from the views of the chancellor. The decision here virtually conceded their correctness, so far as the right of compensation was dependent on a franchise and property in the railroad. But this court held that compensation for the appropriation of the property had been substantially provided for in the legislative scheme. See *6 C. E. Gr. 557*.

Now if a railroad company have a property in their track laid on the highway, and in their franchise of operating it for tolls, which entitles them to compensation for the use of it by a rival car company, on what substantial ground can it be denied the same right when a like use is made of its track by coaches or omnibuses of competing companies? It is true that there may be a vast difference in the degree to which a railroad company would be interfered with, whether the interference proceeds from use by cars or by coaches capable of being turned off the track; but, so far as the property and franchise are concerned, the interference is identical in kind. The use in each case is equally an appropriation of property, which its owner may resist unless compensation be provided for him.

It is urged, with great force, that there is an implied permission to use the rails thus laid on a public highway, to every one

Citizens Coach Co. *v.* Camden Horse Railroad Co.

lawfully passing over the public road in the prosecution of a lawful business, and who do not directly interfere with the passage of the cars. It may be conceded that, by the legislative requirement that the rails should be laid and maintained on the level of the road and of the width of the ordinary wagon track, and by the company's acceptance of such terms in the grant, some permission to use the rails is implied. It is a permission not emanating from the company, nor is it revocable by it. It arises from the nature of the grant, and the conditions under which the track is allowed to be laid. So far as its use, by persons driving for pleasure, on journeys, or in ordinary traffic is concerned, such an implication may well arise. Such use is in no way inconsistent with the grant to the company, and is not destructive to its business. It does not affect the company's rights or franchise. It may wear its rails, but that is part of the compensation the company gives the public for its rights. But the implied permission now discussed must not be extended further than is consistent with the purpose and design of the grant to the company. That purpose was to serve the public by a use of the public highway for public travel, whereby a cheap, convenient and regularly-recurring mode of carriage should be provided for all passengers. For that purpose all the powers of the company were given. Undoubtedly a correlative duty devolved on the company to lay its track and to run its cars for the benefit of the public. Under such circumstances, the laying of the rails must be considered a permission to use them only so far as such use is consistent with the grant and its purpose. Clearly the railroad has not become part of the street. The sills, ties and rails are laid on the street, but they are not part of it. They constitute a part of the machinery for the transportation of passengers, and, although placed on the street, no more become part of it than the cars or carriages placed on the rails. *Brooklyn Cent. R. R. Co.* v. *Brooklyn City R. R. Co., ubi sup.* Retaining thus its property, no permission to use it will be implied, if the use is inconsistent with the grant and its purpose. And there can be no question but that its use for a business competitive with that for which the company was created, is inconsistent with the grant, and tends to thwart its

purpose and to destroy the usefulness of the company to the public. Permission for a use inconsistent with the grant will not be implied. On the contrary, the implication is of an exclusion of such use.

The conclusion then is, that the horse railroad company, the complainant below, acquired, by the grant contained in the charter, a franchise and property in its tracks when laid, which is exclusive of the use thereof by other persons or companies, in competition with it in the business of carrying passengers for hire.

The cases cited in the opinion of the chancellor indicate an almost universal acquiescence in this conclusion, wherever this question has been raised. In addition to those cases, there may be cited the case of *Buffalo R. R. Co.* v. *Leighton*, in which, upon a state of facts identical with this case, Chief-Justice Sheldon, of the Supreme Court of Buffalo, at June term, 1880, restrained the defendant from using the tracks of the plaintiff's railroad in the business of carrying passengers in vehicles of any description. The whole subject is admirably summed up in a report to the legislature of Massachusetts, made in 1865, and to be found in *1 Redf. on Railways 328.*

Upon such a conclusion being arrived at, it is quite manifest that the decree below must be sustained. Such an interference with a franchise granted by the state, and exclusive in its character, as is proved to have occurred in this case, may be restrained by injunction. *R. & D. B. R. R. Co.* v. *D. & R. Can. Co., 3 C. E. Gr. 546.*

It may be further remarked that any possible right which the coach company may have to the incidental use of the rails in the use of the street, has been preserved by the decree and injunction. No appeal was taken on the part of the complainant below, and I have thought it unnecessary to consider the question presented by this limitation.

BEASLEY, C. J.

The object of the bill exhibited in this case is to prevent the use and obstruction of the complainant's horse railroad, in the

city of Camden, by the Citizens Coach Company, the appellant in this court.

I have had no difficulty in settling in my own mind what the rights, under ordinary circumstances, of the horse railroad company are. The company was duly chartered by the legislature to build their road, and to run cars and other vehicles upon it, and to charge for the transportation of persons and property thereon, provided that such charge should not exceed a certain maximum sum. I regard this grant of power as giving to the corporation on which it was conferred the exclusive right to the use of this road as a railroad. No one, without its consent, can put cars or other vehicles upon such track, for the purpose of using it as a railroad. And further, as a necessary incident, this company acquired the right of way when overtaking or meeting ordinary vehicles.

On the other hand, I have no idea that, by thus having laid this track, such company acquired the exclusive right to use the space so occupied, or any part of such space. That space still remained part of the public street, open, in its entire area, to the use, in the ordinary way, of every citizen. Such citizens, under such conditions, could use, as a part of the street, either transversely or longitudinally, the rails so laid. I would refer only so far to the authorities as to say that, with almost entire unanimity, they maintain this right in the public as against such a chartered right as the one now in question. And it is also obvious that it is upon this foundation alone that the legislative claim, which has been several times sanctioned by the courts of this state, to appropriate the public streets to the use of these railroads, without making compensation to the land-owners whose title extends over the property so applied, can be justified. Nor does it seem to me that any class of persons is excluded from the enjoyment of this public right. A company or a corporation engaged in a business competition with that of this railroad company neither loses nor gains anything by such a relation. The entire street can be used in such a competition to the same extent, and in the same manner, as it is lawful to use it in the pursuit of any other business.

Such being the relative rights of the public and of the railroad company, the question arises in this case whether, in the matters here complained of, the rights of the latter have been infringed by the appellant. The respondent complains that the appellant has been using its railroad in the transportation of passengers. The latter avers that it has only been using the railroad in such business as a part of the public highway, as it had a right to do. It seems to me that the question is solved as soon as it is determined what is a use of the railroad and what a use of the highway. The peculiarity of the use of the railroad consists in its continuity; the vehicles remain upon the rails from one terminus to the other, thereby gaining the advantage of avoiding the impediments incident to the uneven surfaces of ordinary road-beds. But when the railroad is used as a part of the highway, there is no such continuity of use. It is true that on such occasions ordinary vehicles will be run, for various distances, upon the rails; but such use of them is accidental and intermittent. I think it results from these definitions that when, in the pursuit of any business, the wagons connected with it are run, by way of preference and to the largest extent practicable, on one of these railroads, such practice is a use of the railroad. Such use differs very slightly from that which the company makes of its own road. It is true that, in a wide sense, such use is a use of the public street; but, in the same sense, so is that of the railroad company with its cars. Therefore it seems to me that where it is a part of the scheme of a business to use in its prosecution the railroad track in preference to the other parts of the highway, the carrying out of such plan is a use of the railroad, and is a violation of the exclusive franchise which I have said is, in that respect, vested in the railroad company.

And this, I think, is what has been done in the present case. The evidence has satisfied me that the use that has been made of the road of this respondent by the vehicles of the appellant has been the result, not of accident, but of design. It has been quite clearly proved that there has been an understanding, either express or tacit, between the managers of this coach company and their employees, that the road of the respondent was to be

converted into one of the efficient instruments of its business; and as was to be expected, such understanding has been put into effect, utterly regardless of the embarrassments which, by such action, were thrown upon the respondent. The road of the respondent has not only been used by this rival company to the greatest extent practicable, but has been used in such a manner as seriously to obstruct the convenient employment of it by its owner. Against the continuance of such conduct the respondent had a right to appeal to the law for protection.

And it is on this same ground that it appears to me that the relief by injunction was admissible. These interferences with the rights of the respondent being the outcome of an organized plan, could not be sufficiently remedied except by the preventive power of a court of equity. Occasional interruptions and invasions of this franchise, not being parts of a general scheme, would not have justified such interposition, as such wrongs, being both public and private nuisances, could have been sufficiently repressed by actions at law or by indictments. Under such conditions, these latter methods of redress would have been the appropriate and sole remedies. But such repressions would not be adequate where the wrong-doing proceeds from a concerted plan of operations, because, as the remedy would be aimed at the effects, and not at the cause, the result would be the inefficiency, with respect to results, that in general attends a great multiplicity of suits.

I have regarded these questions as of considerable importance, and have, on that account, preferred to express my own views on the subject; and it is in consequence of such views that I shall vote to affirm the decree rendered in the court below.

*Decree unanimously affirmed.*